LAWTON v. LEVY and others.

A simple contract creditor may file a bill to have the trusts of a deed of assignment for the benefit of creditors carried into effect. But a creditor who wishes to impeach such a deed, must first obtain a judgment and proceed to the extent of an execution at law.

A voluntary settlement upon a wife by a husband can only be impeached by a judgment creditor.

If partners dissolve and fraudulently turn the co-partnership property to the payment of private debts, it *seems* that a simple contract creditor of the partnership may file a bill to restrain them.

The bill was filed by Charles Lawton and by Thomas C. Williams and William H. Mann, partners under the style of Thomas C. Williams and Co., on behalf of themselves and all other creditors of the defendants Hyman Levy and Henry Levy, partners under the firm of H. & H. Levy, in order to set aside one of the trusts of a deed of assignment as fraudulent. The complainants were simple contract creditors upon dishonored promissory notes given by H. & H. Levy for coal sold and delivered. The deed of assignment recited a settlement upon Zipporah, the wife of the said Henry Levy, of the sum of six thousand six hundred and forty six dollars and of which the other defendant Hyman Levy was a trustee, and stated that the amount had been embarked in the copartnership business of H. & H. Levy. The trusts in the assignment were as follows: (after reimbursing costs, &c.) " And do and shall pay thereout, unto the said Hyman Levy, as trustee of Zipporah Levy as aforesaid, the said sum of six thousand six hundred and forty six dollars, mentioned and set forth in the said deed or declaration of trust above mentioned, together with the interest due thereon, as is also set out in the said deed, it being understood that, for the purpose of perfecting the intention of the said deed or instrument of declaration that the same may not interfere with the operation of these presents, that from the first sales and collections, as soon as the said sum of six thousand

six hundred and forty six dollars, with the interest there-
on over the expences of realizing that amount only, is
received and collected in money that the S. B. H. Judah"
(the trustee) " or his executor or administrator is to pay
over the same to the said Hyman Levy, as trustee as afore-
said, without waiting for the further fulfilment or closing of
the trust herein reposed in him; and deducting and retain-
ing the balance of the costs, charges and expences provided
for and directed to be retained by the said S. B. Helbert Ju-
dah, as is above mentioned. And after full payment of the said
monies and all the aforesaid costs, charges, commissions and
expences, then *in trust* that the said S.B. Helbert Judah his ex-
ecutor or administrator shall pay to Mrs. Sarah Levy, wi-
dow of Solomon Levy deceased, lately of the Island of Ja-
maica in the British West Indies, but now a resident of the
city of New York, the sum of three hundred dollars, with
the interest due thereon from the first day of January one
thousand eight hundred and thirty two. And also *in trust*
that the said S. B. Helbert Judah shall pay to Miss Henri-
etta Levy, also a resident of the city of New York, the sum
of six hundred and forty dollars, with the interest due there-
on from the first day of January one thousand eight hundred
and thirty two, both of which sums of money are money bor-
rowed from the said Sarah Levy and Henrietta Levy by the
said Hyman Levy and Henry Levy and by them placed in their
said co-partnership and business. And after the full pay-
ment and satisfaction of the same, then *in trust* that he the
said S. B. Helbert Judah his executor or administrator do
and shall apply the residue of the trust monies in and to-
wards payment and satisfaction of the claims and demands
of all the rest of the creditors of them the said Hyman Levy
and Henry Levi *pari passu* and without any preference and
priority of payment. And after payment and satisfaction
of the claims of the said creditors and their debts, claims
and demands as aforesaid, then, *in trust* that he the said S.
B. Helbert Judah or the executor or administrator of the
said S. B. Helbert Judah, do and shall pay the surplus of the
said trust monies (if any) unto the said Hyman Levy and
Henry Levy their executors, administrators and assigns, &c."

The complainants charged the settlement made upon the

wife of the defendant Henry Levy to be fraudulent as against creditors; also, that inasmuch as the money was not invested pursuant to the settlement, but was kept in the joint trade of the said H. & H. Levy, therefore the intended *cestui que trust* took no interest thereby and the fund ought to be devoted to the payment of their debts; and that the fund was and continued to be co-partnership property. These complainants also insisted upon the deed of assignment being made to delay, hinder and defraud creditors, and set forth circumstances in aid of their charges; alleged the irresponsibility of the trustee (who was made a defendant); and prayed for a receiver, injunction and *ne exeat*; and that the assignment might be decreed to be fraudulent and void and the defendants should account, &c.; and, for further relief.

An injunction had been granted; and, upon the coming in of the answers, a motion was now made to dissolve it.

Mr. *John Anthon* and Mr. *S. B. H. Judah* in support of the motion.

Mr. *S. Sherwood* and Mr. *O. Bushnell* for the complainants.

THE VICE-CHANCELLOR:—Upon the argument of this motion, the question occurred to me: whether a bill like this, by simple contract creditors, could be sustained, even though fraud might appear from the pleadings. I am inclined to think I must test this motion by the bill itself: for, if the complainants have no right to file the bill, then the injunction ought not to be retained until the hearing. It is true, the parties have answered; yet, although defendants do this in cases where a demurrer will hold, they may raise the objection at the hearing.

The great difficulty is, in the bill being filed by creditors at large, before judgment. No doubt a bill may be filed by such creditors either by simple contract or specialty against the trustees in a deed of assignment for the benefit of creditors, in order to compel a performance of the trust: but, the present is a proceeding to set aside such a deed to a certain extent. The court has been referred to the cases of *Russell* v. *Hammond*, 1. Atk. 13. and *Taylor* v. *Jones*, 2. Ib. 600. in sup-

*1834.*

LAWTON
*v.*
LEVY.

*April 29.*

port of such a bill by simple contract creditors.   In *Russell* v. *Hammond*, the bill was filed by the general creditors of a deceased debtor against his representatives for discovery and payment and to set aside a settlement made on the widow after marriage.   Now, this I take to be not a case in point: for, there is no doubt of the right of general creditors to file a bill against personal representatives for payment out of the estate of their deceased debtor.   With regard to *Taylor* v. *Jones* : it would appear from the report of the case that the bill was filed by simple contract creditors; and the question in the cause was, whether a settlement made for the benefit of the defendant, his wife and children, was fraudulent ?  But the note to the case, by Mr. Saunders, shows that the defendants had given warrants of attorney to the creditors to confess judgments against him and they had given him a letter of license, but it was agreed that the letter of license was not to prevent them from proceeding against his effects, although it was to protect his person.   The fact that the creditors had authority to enter up a judgment may have been deemed sufficient to obviate any objection to the filing of the bill, as simple contract creditors, and hence the objection may not have been taken.   The Master of the Rolls observes in giving judgment, that " the great question is if the deed be fraudulent? for, if it is, whether the creditors have any specific lien is not material ; for as soon as the judgment was entered it would have been a specific lien"—plainly shewing that it was treated as a judgment creditor's bill.   It is a principle of the courts that a creditor must first get judgment and exhaust his legal remedy.   In *Colman* v. *Croker*, 1. Ves. Jr. 160 ; Lord Thurlow said, " as to the fraud" (in making a voluntary settlement) "there must be some creditor to complain of that ; and he must put himself into a situation to complain, by getting judgment for his debt, and stating that by the settlement he is defrauded."   This rule has been repeatedly recognized in our own court as well as in the English chancery and is too well established to allow of my breaking in upon it : *Wiggins* v. *Armstrong*, 2. John. Ch. R. 144.; *Brinckerhoff* v. *Brown*, 4. John. Ch. R. 671 ; *Williams* v. *Brown*, Ib. 682. ; *McDermott* v. *Strong*, Ib. 687.

We have cases in our own books where voluntary settle-

ments have been impeached by creditors. Thus, in *Reade* v. *Livingston*, 3. J. C. R. 481. a creditor, but still a judgment creditor, filed a bill for such a purpose. The circumstances in *Bayard* v. *Hoffman*, 4. Ib. 450. were somewhat peculiar. The bill was filed by general assignees of the husband and his partner for themselves and other creditors against the defendants who were assignees for the benefit of the wife and children. The case of *Hendricks* v. *Robinson*, although not a case of settlement, shows that a creditor desirous of setting aside a trust deed must first have obtained a judgment and proceeded to the extent of an execution.

Nevertheless, there may be cases in which a bill can be sustained by simple contract creditors at large against their debtors. Thus, I am inclined to say, if parties concerned in a partnership have dissolved and made a disposition of the property which was illegal and fraudulent as to creditors of the partnership, the court would sustain a bill filed by the latter, even though they might be only simple contract creditors, and cause the partnership property to be applied to partnership purposes according to law and equity. The present bill alleges a partnership and an assignment made of partnership effects : also, that the money, said to be embraced by the settlement, was invested in the partnership business ; and it goes on to insist upon the propriety of applying it to partnership uses. But, there is no distinct allegation of a dissolution of partnership nor of a direct misapplication or diversion of partnership property. When I take the charges in the bill, in connection with its prayer, I do not think I should be justified in a decree on the ground of any apparent danger of misapplication of personal property. The scope of the prayer is, that the assignment may be declared void and the complainants be paid out of the assigned property *and* for further relief. The prayer for further relief is here in the conjunctive ; and it has been decided that, in such a case, no relief inconsistent with the specific relief prayed for, can be had : in order to have the benefit of it, this general prayer must be in the disjunctive.

It appears to me impossible that the complainants can have the relief they want under the present pleading. It only goes upon the ground of fraud in the assignment ; and

1834.

LAWTON
*v.*
LEVY.

doing so, these parties ought to come as judgment creditors who have exhausted their legal remedies. There are suspicions of fraud; but I must, according to the present character of the bill, dissolve the injunction. I shall do it, however, without costs.

The complainants may find it necessary to dismiss their present bill and file another.