# Parish & Co. *v.* Joseph C. Lewis *et al.*

In order to reach equitable assets or other things not subject to an execution at law, the remedies at law must be exhausted by the return of an execution unsatisfied ; and no state of facts will excuse the omission of such a return.

Where there are several joint debtors, the creditor must exhaust his remedy by execution against all, before he can come into equity, unless one of them should stand in the situation of a surety to the others.

As a general rule, the creditors of a partnership cannot enforce a claim purely legal in its nature, against the partnership property, except by an action at law. An exception to this rule is, where the partnership is dissolved by the death of one of the partners; there the remedy of the joint creditors at law is against the survivors alone, but in equity they may proceed jointly against the survivors and the representatives of the deceased partner.

The right to apply partnership property to the payment of joint debts, only exists as between partners themselves. They have a right to say that this equity shall no longer exist. A sale of the stock in trade by one partner to another puts an end to that equity, and the joint property thereafter becomes the separate property of the purchasing partner, and is not liable in his hands to the claims of the joint creditors.

This bill was filed for the purpose of subjecting firm assets to the payment of firm debts, upon the following state of facts:

In the year 1837 Joseph C. Lewis, Joseph W. Dobbs and Samuel B. Cusack, who is now dead, were transacting a mercantile business in Manchester, as partners under the firm and denomination of "Cusack, Lewis & Dobbs." They purchased on credit a large stock of goods, for which promissory notes executed in the firm name of Cusack, Lewis & Dobbs were given, nearly all of which remain unpaid. Some short time thereafter the defendant Lewis sold out his interest in the concern to his co-partners, Dobbs and Samuel B. Cusack. Some six months thereafter, they sold the same stock of goods to E. C. Wilkinson, on a credit of one, two and three years, who executed his notes therefor payable

to S. B. Cusack and Dobbs, by their firm name of Cusack & Dobbs. The note first due is paid. The note secondly due was deposited with the Commercial Bank of Manchester, as collateral security for a cotton bond held by the bank against the defendant, James W. Cusack, and Dobbs. It was so deposited by James W. Cusack, without the knowledge or consent of either of the parties to whom it belonged. Said note is still unpaid. The note falling due thirdly, has been in part paid; it was divided into two notes, one for about two thousand dollars, which has been paid except seven hundred and fifty dollars, and is now held by defendant, Turner; the other for about three thousand four hundred and forty dollars, now held by the Commercial Bank of Manchester, and was also placed with the Bank, as collateral security for a note which has since been paid. Defendant Wilkinson holds sets-off against the last mentioned note and prays for a disclosure of their amount. All the different assignments of these notes were made without the knowledge or consent of defendant Lewis, and in fraud of his and the complainants' rights. James W. Cusack and Dobbs are both insolvent, as also the estate of S. B. Cusack. The firm of Cusack, Lewis & Dobbs is indebted to complainants for merchandise sold them by complainants, and which was part of the lot of goods sold by them to Wilkinson.

The answer of Lewis & Dobbs admits all the allegations of the bill, and makes the case in some few particulars stronger than the bill itself.

The answer of Wilkinson admits all the material facts of the cause as alleged in the bill, and claims sets-off to the amount of two thousand five hundred and twenty-eight dollars.

The answer of Turner denies all notice or knowledge of the condition of the note in his possession when he took it; knows nothing of the facts set up by the bill, and calls for proof.

James W. Cusack has not answered, and the bill is taken for confessed, as to him.

The answer of the Commercial Bank of Manchester admits that the note for four thousand four hundred and eighty-seven dollars and ten cents, executed by Wilkinson for the goods bought from S. B. Cusack and J. W. Dobbs, was deposited by James W. Cusack and J. W. Dobbs, as collateral security for a cotton bond

executed by the last named persons; and that in point of fact it has never been paid, and has undergone no alteration since it was so deposited, except by having been included in one large note for about thirty thousand dollars, made by Wilkinson in renewal of all his separate liabilities to the bank. The entire residue of the answer is not responsive to the bill, except the admission that the note for three thousand four hundred and forty dollars deposited with her as collateral security, is not now claimed by the bank, the debt it was intended to secure having been paid.

James W. Cusack proves that he received the note now held by Turner for seven hundred and fifty dollars from S. B. Cusack and James W. Dobbs, in payment of a debt due to him by them, and that he transferred the same to Turner, without imparting to him the true character of the papers thus transferred.

W. R. MILES for complainant.

From the facts presented in this case we have now to inquire first, whether as between the Commercial Bank of Manchester and the complainants in this cause, equity will not deem the two notes now held by her, for the sums of four thousand four hundred and eighty-seven dollars and ten cents, and three thousand four hundred and forty dollars, originally deposited as collateral security, to be delivered up by her to the complainants, and direct their proceeds to be appropriated in payment of the firm debts of Cusack, Lewis & Dobbs; and secondly, whether Turner is entitled to hold the note of seven hundred and fifty dollars now in his possession, against the equitable claim of complainants.

In regard to the note of three thousand four hundred and forty dollars held by the bank, there is no controversy. It is admitted by the bank that she has no claim upon it, and is ready at any time to deliver it up to the proper owner. This court cannot hesitate to say who the proper owner is. It is a rule admitting of no qualification, that the firm assets are first liable to the payment of firm debts, to the exclusion of all other demands. 2 Swanst. 575; 1 Vesey, 239, 455; 6 Vesey, 126–7–8; 3 Mason, 312; 5 John. Ch. Rep. 60; 4 Vesey, 396; 15 Vesey, 557; Wightwick's Rep. 50; 6 Exchequer Rep. 445; Gow on Part. 223 to 228; 2 Story's Eq.

500, 3 P. Wms. Rep. 24; 2 ib. 500; 1 Atk. Rep. 67; do. 138; 3 P. Wms. 405; 3 Bro. Cha. Rep. 457.

The same doctrine has been twice recognized by this court. Adams *v.* Burford *et al.*, decided December term, 1840 ; and Pinckard and Arnold *v.* M. B. Hamer *et al.*, decided January term, 1842.

There is no controversy about the identity of these two notes held by the bank. The fact is alleged by the bill, distinctly admitted by the answers of Lewis, Dobbs and Wilkinson, by the *pro confesso* decree against James W. Cusack, and is not denied by the answer of the bank.

Nothing is shown by the pleadings and proof why the rule just laid down should not apply as to the note for four thousand four hundred and eighty-seven dollars and ten cents. It is one of the three notes originally executed by Wilkinson for the purchase money of the lot of goods. It never has been absolutely transferred. It was deposited as a collateral security by a man who had not the shadow of legal or equitable title to it, for a cotton bond due to the bank, and has never been paid otherwise than by renewal at the bank.

But it is contended that the note for $4,487 10, having been deposited as collateral security with the bank by James W. Cusack and Joseph W. Dobbs, for a debt due by them, does not divert the legal title to the note out of S. B. Cusack and Joseph W. Dobbs, who were members of the firm of Cusack, Lewis & Dobbs, 5 John. Ch. Rep. 54; 20, John. Rep. 650 and Holmes *v.* Carman, *et al.* decided at this term of the court. Ergo, it does not impair the equitable lien held on it by complainant; see the cases first cited. Complainants have their lien by virtue of the equities existing between the partners ; and their rights are worked out through the equities of the partners, 3 Des. Rep. 203; 1 Not. & McCord's Rep. 556 ; 4 Han. & McHen. Rep. 167 ; 2 Paige Rep. 400 ; 3 Ib. 167—518.

It may not be insisted with success that the maxim " *in eqali jure malior est conditio possidentis,*" applies in this case. For the equities are not equal between the bank and complainants. The bank paid nothing for this note, but took it merely as collater-

Parish & Co. *v.* Joseph C. Lewis *et al.*

al security for a pre-existing debt, due by James W. Cusack and another.　The goods sold to S. B. Cusack, Lewis & Dobbs, by complainants, constituted a part of the lot of goods sold to Wilkinson, for which the note in question was executed.　Complainants sold to S. B. Cusack, Lewis & Dobbs, their merchandise on credit, and have thus parted with their property.　The bank never advanced a dollar or parted with a cent's worth of property on the faith of this note.

Again, if the bank is permitted to retain this note, it results in a total loss to complainants without benefitting the bank in the least. For it being deposited with the bank as collateral security, for a cotton bond, in fraud of the rights of Cusack, Lewis & Dobbs, of complainants, and all others of their firm creditors, he loses nothing by its surrender; being permitted to collect the amount of the cotton bond from the makers, which may be done without difficulty; Johnson and Hope, two of the signers, being perfectly solvent.

Now if the bank loses nothing by the surrender of the note, and complainants lose its entire amount by the failure of the bank to do so, it is clear upon the most equitable principles that the note should be decreed to be delivered up to complainants.

As to the note of $750, held by Turner, we do not propose making an argument.　If the court thinks from the facts of the case we are entitled to a decree, it can so order.

R. S. HOLT for defendant Turner.

Turner in his answer states that " Cusack and Dobbs" were indebted to James W. Cusack in about the sum of two thousand dollars, and that said two thousand dollar note was at their instance made payable to said James W. Cusack, and that was accepted by him in payment or liquidation of the debt due him from said firm of Cusack & Dobbs.　He does not admit that said two thousand dollar note was made by said Wilkinson for a debt due to the firm of Cusack, Lewis & Dobbs, and requires proof, and alleges that said note was accepted by James W. Cusack, without notice that it was given for a debt due from said Wilkinson to said firm of Cusack, Lewis & Dobbs, or that said firm had any right, claim, or title to it.

He further states that said two thousand dollar note was transferred to him by James W. Cusack, in liquidation of a debt due him from said Cusack, and that he took said note without any notice whatever of any claim or title of said firm of Cusack, Lewis & Dobbs, to it.

He alleges that after said note had been transferred to him, said Wilkinson insisted on being credited thereon with the sum of one thousand dollars, the amount of certain claims which he held against said James W. Cusack. That he allowed this claim, and that Wilkinson then made his note payable to him, Turner, for the balance due on said note, and that he now holds this last note of Wilkinson, on which there is due and unpaid about seven hundred and forty-five dollars.

The deposition of James W. Cusack, taken by Turner, proves distinctly that said two thousand dollar note was taken by him for a debt due to him from Cusack & Dobbs; that he received it under the full conviction that it was the property of the firm of Cusack & Dobbs; that he transferred said note to Turner, in payment of a debt due from him to Turner, and informed Turner that it had been given for a debt due from Wilkinson to the firm of Cusack & Dobbs.

It is a familiar principle of chancery jurisprudence, that firm property constitutes a trust fund, in favor of each member of the firm, to be applied, in the first place, to the extinguishment of the firm liabilities. 2 Sto. Eq. 500, § 1253; 3 Paige, 507.

It is, further, a well settled and familiar principle, that if one member of a firm sells and conveys his interest in the joint property to his co-partners, the firm is dissolved. From that time the assets of the firm are divested of the character of a trust fund, and become the separate property of the partners to whom the outgoing partner assigns. Cary on Part. 3 Law Lib. 83; 6 Ves. 119; 11 Ves. 3, 6; 10 Ves. 347; Story on Part. 509 to 516.

The bill shows that long before the sale made by Cusack and Dobbs to Wilkinson, out of which the note held by Turner originated, Lewis had transferred his entire interest in the property of the firm to his co partners. The goods sold to Wilkinson, as part of that property, if my proposition of law be correct, became

thus the separate property of Cusack & Dobbs, whose right to dispose of it and its proceeds was complete, and unquestionable. But, should we be wrong in this position, and should the chancellor be of opinion that the notes of Wilkinson were held by Cusack and Dobbs in trust, then we insist that Turner, being a purchaser, as the testimony shows, without notice from the trustees in possession, holds the note, now in his possession, discharged from the trust. 2 Sto. Eq. 452; 1 Mad. Ch. 454; 1 Peer Wms. 128, 272; 2 ibid. 680.

Upon each of these grounds it is urged that the bill should be dismissed as to Turner.

GEORGE S. YERGER for the bank.

There is no evidence in the cause but the deposition of J. W. Cusack.

First. Possession of the note by J. W. Cusack, with the indorsement of the firm of Cusack & Dobbs, is evidence that the latter parted with all property in the note. Their indorsement is sufficient, and this note could not be recovered from either J. W. Cusack or the bank, unless it was proved that, notwithstanding the indorsement, the property of the note was in them.

A party in possession of a note, indorsed, is *prima facie* the owner.

Second. Of course, the answers of Dobbs or Lewis are no evidence against the bank or against J. W. Cusack. Their depositions would not be evidence, as they would be proving, by their own oaths, the note belonged to them.

The CHANCELLOR.

The complainants are the joint judgment creditors of a late partnership concern, consisting of Samuel B. Cusack, Joseph C. Lewis and Joseph Dobbs. It appears that, shortly after the formation of the partnership, Lewis retired from the concern, and that the business was subsequently carried on by Cusack & Dobbs, who ultimately sold out the stock of goods to E. C. Wilkinson, taking from him, in payment therefor, his several promissory notes, payable at different periods thereafter. One of these notes

26*

was transferred into the hands of the Commercial Bank of Manchester, as collateral security for a debt owing to the bank by said Dobbs and James Cusack, a brother of the other partner, Joseph Cusack. Another of said notes was passed into the hands of the defendant, Turner, as it appears, in the discharge of a debt owing to him from Cusack & Dobbs.

The complainants insist that these notes are still to be regarded as partnership effects of Cusack, Lewis & Dobbs; that they were transferred without the consent of all the partners, and that they, as judgment creditors of said partners, have a right to pursue them into the hands of the present holders, and to subject them to the satisfaction of their judgment; and especially, as they allege, that two of the firm (Cusack and Dobbs) are insolvent.

The answers of the bank and of Turner set out the manner in which they obtained the notes in question, and insist upon holding them discharged of any claim on the part of the complainants. It is not necessary, from the view which I have taken of the case, to notice the facts more in detail. It is with reluctance that I find myself compelled to decide the case, in part, upon a question not made at the hearing; and I should have directed an argument upon it, if there could be any doubt respecting it. That question is: Can the complainants maintain their suit as mere judgment creditors, without showing the return of an execution unsatisfied?

The partnership effects, which they seek to subject to their judgment claim, are in the hands of third persons, claiming them as their own, and consist in mere *choses in action*, not liable to seizure and sale under an execution at law.

Now, I understand the rule to be this : If you wish to reach *legal* assets of your debtor, and to remove obstacles which obstruct your course at law, it is sufficient that you show a judgment, creating a lien upon those assets; but if you wish to reach equitable assets, or other things not subject to execution at law, you must show that you have exhausted your remedies at law, by a return of an execution unsatisfied, as the *foundation* of your right to come into this court. In such case, the complainant's *right* to relief in this court depends upon his having run his execution at law without being able to satisfy his judgment. It is not a mere

technical objection, but goes to the very foundation of the suit, and is not waived even by a general answer. The complainant must show an execution returned unsatisfied, and no state of facts will excuse such a return. Brinkerhof *v.* Brown, 4 John. Ch. R. 671, 687; McElwain *v.* Willis *et al.* 9 Wendall 548; Scriven *v.* Bostwick, 2 McCord's C. R. 416; Hadden *v.* Spader, 20 John. R. 554; Moore *v.* Young, 1 Dana's R. 516.

It is true that the complainants in this case allege that two of the debtors, Cusack and Dobbs, are insolvent; but there is no allegation that the other partner (Lewis,) is insolvent; and if there were, it would not be sufficient according to the authorities to which I have referred. Where there are several joint debtors, the creditor must exhaust his remedy by execution against all, before he can come into this court, unless one should stand in the situation of a surety to the others. Child *v.* Brace *et al.* 4 Paige Ch. 309. I think then, that the complainants' bill cannot be sustained, unless there is something in the fact, that they claim as partnership creditors, which exempts it from the application of the rule to which I have adverted.

I know of no case which holds that the creditors of a partnership, having a purely legal claim, can come into equity for its inforcement upon any other terms than those which govern what is usually called a creditor's bill. There is to be sure a dictum of the vice chancellor of New York, in Lawton *v.* Levy, (2 Edw. Rep. 201,) in favor of supporting a bill by the simple contract creditors of a partnership which had been dissolved, and where the partners were making a fraudulent disposition of the effects; but this dictum is wholly unsustained either by principle or authority. The case of Child *v.* Brace, (4 Paige, 309,) is an authority directly the other way, and is strikingly analogous to the one before me. In that case, as in this, the complainant had obtained his judgment at law against partners, and filed his bill for the purpose of reaching choses in action; no execution had been sued out; the insolvency of the partnership was alleged, but there was no proof upon that point; and the bill was dismissed at the hearing, upon the ground that the complainant had not exhausted his remedy at law. If the complainants may maintain this bill, it must be because they have

some equity in or quasi lien upon the effects which they seek to reach. I think a reference to the authorities will show that no such pretentions can be sustained. In the case ex parte Williams, 11 Ves. 5, Lord Eldon says, that after a dissolution of a partnership, the partnership property still retains its character for the purpose of distribution, not as the rights of creditors, but as the rights of the partners themselves require. And he adds, that it is through the operation of administering the equities as between the partners themselves that the creditors have that opportunity. As a general rule the creditors of a partnership cannot enforce a claim purely legal in its nature against the partnership property, except by an action at law. One exception to this rule is where the partnership is dissolved by the death of one of the partners; there the remedy of the joint creditors at law is against the survivors alone, but in equity they may proceed jointly against the survivors and the representatives of the deceased partner. The right of creditors to have the partnership property applied in satisfaction of their claims, depends upon the right of each partner so to apply it in exoneration of his private estate. In ex parte Kendall, 17 Ves. 526, Lord Eldon said, in all these cases of distribution of joint effects, it is by force of the equity among the partners themselves that the creditors are paid, not by force of their own claim upon the assets, for they have none. So in the case ex parte Ruffin, 6 Ves. 119, 126, the Lord Chancellor said, "It is the case of two partners, who owed joint debts and had joint effects. Under these circumstances their creditors, who had demands upon them in respect to those debts, had clearly no lien whatsoever upon the partnership effects. They had the power of sueing and by process of creating a demand that would directly attach upon the partnership effects; but they had no lien upon or interest in them in point of law or equity."

But even if the complainants were rightly before the court in this particular, I can perceive no ground for sustaining their bill as against the defendants, Turner and the Manchester Bank. The complainants claim as the creditors of Cusack, Lewis & Dobbs; they are not the creditors of the firm of Cusack & Dobbs, to whom the notes in question were made payable, and from one of

whom the present holders obtained them. After Lewis sold out his interest in the goods to his partners, Cusack & Dobbs, they constituted from that time a new and separate firm, and were the debtors of the complainants, only on account of their former connection with the firm of Cusack, Lewis & Dobbs; and even supposing the complainants to have had a quasi lien upon the stock of goods when they passed into the hands of Cusack & Dobbs, that lien doubtless ceased when the goods were converted into negotiable notes. But I apprehend no such lien attached or followed the goods into the hands of Cusack & Dobbs. After Lewis retired from the firm by selling out to his co-partners, the partnership property thus transferred became from that time the separate property of the firm of Cusack & Dobbs, discharged from all claim on the part of the creditors of Cusack, Lewis & Dobbs.

In the case ex parte Ruffin, 6 Ves. 119, where a partnership was dissolved by one selling out to the other, and the continuing partners afterwards became bankrupt, the joint creditors petitioned to have their claims paid out of the effects in his hands which had belonged to him and his former partner; but the court decided that the joint creditors had no equity attaching upon the partnership effects remaining in specie in his hands. The same question again arose in ex parte Williams, 11 Ves. 3. In which it was held that the right to apply partnership property to the payment of joint debts, only existed as between the partners themselves, and that it was competent for the partners to say that this equity should no longer exist, that a sale of the stock in trade, by one partner to another, put an end to that equity; and that the joint property, thereafter, became the separate property of the purchasing partner, and was not liable in his hands to the claims of the joint creditors. The court said, "if creditors do not like the arrangement they may go to each of the partners and desire payment." It was admitted that a mere dissolution would not be considered as producing that effect, for there the partner holding possession would hold it in trust for the payment of the joint debts. I think that these decisions are sustained by the strongest considerations of policy, and sanctioned by the general rules of law in relation to private property. It would open a wide door for imposition, if property which a man holds as his own, and upon the faith of

which he is dealing with the world, was allowed to be trammeled with secret and tacit liens, because it had once been the subject of partnership rights.

I am accordingly of opinion that the bill must be dismissed at the complainants' costs.

Let a decree be prepared accordingly.